**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In Re:                                                      Bankruptcy Case No.: 11-27057-AJC
                                                             Chapter 7
ABRAHAM I. BERTAN
IVON RIERA-BERTAN

     Debtors.

_____/

SPACE COAST CREDIT UNION,
as successor in interest by merger to Eastern          **CASE NO. 1:14-cv-23709-JAL**
Financial Florida Credit Union,

     Appellant,

v.

ABRAHAM I. BERTAN
IVON RIERA-BERTAN

     Appellee.

_____/

<u>**APPELLANT, SPACE COAST CREDIT UNION'S OPENING BRIEF**</u>

-------------------------------------------------------------------------------------------------------------

On Appeal from the United States Bankruptcy Court for the Southern District of Florida

-------------------------------------------------------------------------------------------------------------

**Alexis S. Read, Esq**.
*Counsel for Appellant*
Fla. Bar No. 98084
BLAXBERG, GRAYSON & KUKOFF, P.A.
25 SE Second Avenue, Suite 730
Miami, Florida 33131
P: (305) 381-7979 x 317
F: (305) 371-6816
alexis.read@blaxgray.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………………..…….2

PREFACE …………………………………………...…………………………………….5

STATEMENT OF JURISDICTION ………………………………………………….…5

STANDARD OF APPELLATE REVIEW ……………………...…………………….6

STATEMENT OF THE FACTS ……………………………………………….....…….6

STATEMENT OF THE CASE AND BACKGROUND ……………………………….....8

STATEMENT WITH RESPECT TO ORAL ARGUMENT ………..…………….…..…11

STATEMENT OF THE ISSUES PRESENTED …………………….…………………..….11

ARGUMENT …………………………………………………………………………….12

I.     *Foldendore* and *McNeal* were wrongly decided and the Bankruptcy Court's decision conflicts with the Supreme Court's reasoning in *Dewsnup* …………………………**12**

II.    Space Coast did not concede to the value of the Property and was prejudiced by the Bankruptcy Court's abuse of discretion in failing to allow an exchange of formal appraisals and evidentiary hearing to determine the value of the Property ……...……**14**

III.   The Bankruptcy Court should use a flexible approach under 11 U.S.C. § 506(a) to determine the effective date of valuation for purposes of "stripping off" Space Coast's junior mortgage lien …………………………………………………….…..…**17**

IV.   Debtors should not be permitted to "strip off" Space Coast's junior mortgage lien after being granted a discharge under 11 U.S.C. § 727 …………………………………**23**

V.    Debtors should not be permitted to "strip off" Space Coast's junior mortgage lien after expiration of the claims bar date in their "asset" Chapter 7 case ……….……………**27**

CONCLUSION ……………………………………………………………………….…..…**29**

CERITICATE OF COMPLIANCE ……………………………………….…….……………**30**

CERTIFICATE OF SERVICE ………………………………………….…….…...……………**30**

## TABLE OF AUTHORITIES

### CASES

*In re Aragon*, 09-27916-RAM (Bankr.S.D.Fla 2009) ................................................................ 22

*Assocs. Comm. Corp. v. Rash*, 520 U.S. 953 (1997) ..................1**Error! Bookmark not defined.**

*Atl. Sounding Co., Inc. v. Townsend*, 496 F.3d 1282 (11th Cir. 2007).......................................... 9

*In re Aubain*, 296 B.R. 624 (Bankr.E.D. N.Y.2003). ................................................................. 18

*In re Bartee*, 212 F.3d 277 (5th Cir.2000)................................................................................. 19

*In re Bast*, 366 B.R. 237 (Bankr.S.D.Fla.2007)..........................2**Error! Bookmark not defined.**

*In re Balonze*, 336 B.R. 160 (Bankr.D.Conn.2006)). ..................2**Error! Bookmark not defined.**

*In re DeVore*, 223 B.R. 193 (9th Cir. BAP 1998)) ..................................................................... 22

*In re Blanco*, 09-18337-LMI (Bankr.S.D.2009)......................................................................... 22

*In re Brotman Medical Center, Inc.*, 2008 WL 8444797 (9th Cir.B.A.P. Aug. 15, 2008);.......... 28

*In re Brown*, 746 F.3d 1236 (11th Cir. 2014)..............................1**Error! Bookmark not defined.**

*In re Brown*, No. 08-cv-1517, 2008 WL 5050081 (M.D.Fla. Nov.19, 2008) ............................... 6

*In re C.W. Min. Co.*, 477 B.R. 176 (B.A.P. 10th Cir. 2012)....................................................... 28

*In re Cahill*, 503 B.R. 535 (Bankr.D.N.H.2013) .......................................................... 17, 20

*In re Caliguri*, 431 B.R. 324 (Bankr.E.D.N.Y.2010) ........................................................ 9

*In re Campbell*, 498 B.R. 370 (Bankr.N.D.Ga.2013) ........................................................ 9

*In re Campos*, 09-24546-AJC (Bankr.S.D.2009) ............................................................ 22

*In re Cassell*, 688 F.3d 1291 (11th Cir. 2012) ............................................................... 26

*In re Catalano*, 510 B.R. 654 (Bankr.M.D.Fla.2014) ..................................................... 25

*In re Channakhon*, 465 B.R. 132 (Bankr.S.D.Ohio 2012) ..................................... 27, 29

*In re Chira*, 378 B.R. 698 (S.D. Fla. 2007)
………………………………………….………………………………………………6

*Cook v. IndyMac Bank (In re Cook)*, 449 B.R. 664 (D.N.J. 2011)................................... 9

*In re Covington,* 368 B.R. 38 (Bankr.E.D.Cal.2006) ...................................................... 26

*In re Crain*, 243 B.R. 75 (Bankr.C.D.Cal.1999)....................................................... 28, 21

*In re Cutaia*, 410 B.R. 733 (Bankr.S.D.Fla.2008)........................................................... 26

*In re Davis*, 716 F.3d 331 (4th Cir. 2013) ................................................................. 24, 25

*In re Dean*, 319 B.R. 474 (Bankr.E.D.Va.2004) ............................................................ 18

*In re Dean*, 537 F.3d 1315 (11th Cir. 2008) ................................................................... 26

*Dewsnup v. Timm*, 502 U.S. 410 (1992) ............................................................... *passim*

*In re DV8, Inc.,* 435 B.R. 738 (Bankr.S.D.Fla.2010) ...................................................... 29

*Pioneer Services Co. v. Brunswick Assocs. a Ltd. P'shp.,* 507 U.S. 380 (1993)) ........ 29

*In re Farmer*, 257 B.R. 556 (Bankr.D.Mont.2000) ......................................................... 21

*In re Farr*, 278 B.R. 171 (9th Cir. BAP 2002) ................................................................ 26

*In re Fin. Federated Title & Trust, Inc*., 309 F.3d 1325 (11th Cir. 2002) .................... 6

*In re Fisette*, 455 B.R. 177 (8th Cir. BAP 2011)............................................................. 24

*Folendore v. United States Small Bus. Admin.*, 862 F.2d 1537 (11th Cir.1989)................ *passim*

*Frazier v. Real Time Resolutions, Inc.,* 469 B.R. 889 (E.D.Cal.2012)......................... 24

*In re Gerardin*, 447 B.R. 342 (Bankr.S.D.Fla.2011)............................................. 13, 20, 21

*In re Grano*, 422 B.R. 401 (Bankr.W.D.N.Y.2010) ................................................... 9, 20

*In re Green*, 348 B.R. 601 (Bankr.M.D.Ga.2006) .......................................................... 25

*In re Gutierrez*, 503 B.R. 458 (Bankr.C.D.Cal.2013)...................................................... 17

*Harmon v. United States,* 101 F.3d 574 (8th Cir.1996).................................................. 13

*Int'l Diamond Exch. Jewelers, Inc.,* 188 B.R. 386 (Bankr.S.D.Ohio 1995) ..... 2**Error! Bookmark not defined.**

*In re Immel*, 436 B.R. 538 (Bankr.N.D.Ill.2010)............................................................... 9

*In re Israel*, 112 B.R. 481 (Bankr.D.Conn.1990) ........................................................... 25

*In re D'Angona,* 107 B.R. 448 (Bankr.D.Conn.1989) ..................................................... 25

*In re Jemal*, 496 B.R. 697 (Bankr.E.D.N.Y.2013) ......................................................... 29

*Johnson v. Home State Bank,* 501 U.S. 78 (1991) ............................................. 10, 24, 25

*Johnson v. GMAC (In re Johnson),* 165 B.R. 524 (S.D.Ga.1994)................................. 20

*In re Kennedy*, 2013 WL 3338569 (Bankr.M.D.Fla.2013)..........1**Error! Bookmark not defined.**

*In re Ketchum*, 2013 WL 3479652 at *5 (Bankr.N.D.Ohio 2013) ............ 2**Error! Bookmark not defined.**

*Klay v. United Healthgroup, Inc.,* 376 F.3d 1092 (11th Cir. 2004) ………………………………6

*Laskin v. First Nat'l Bank of Keystone (In re Laskin),* 222 B.R. 872 (9th Cir. BAP 1998)) 9,13,25

*In re Malone*, 489 B.R. 275 (Bankr.N.D.Ga.2013) .**Error! Bookmark not defined.**, 9, 22, 24, 25

*In re Taylor*, 3 F.3d 1512 (11th Cir.1993))...................................................................... 22

*In re Marsh,* 929 F.Supp.2d 852 (N.D.Ill.2013) .............................................................. 17

*In re McNeal*, 735 F.3d 1263 (11th Cir. 2012) .................................................................... *passim*

*In re Martin*, 497 B.R. 349 (Bankr.M.D.Fla.2013). ............................................................... 25

*Matter of Mul Corp.*, 60 B.R. 636 (Bankr.D.Conn.1986) ...........2**Error! Bookmark not defined.**

*In re McNeal,* No. A09–78173–PWB, 2010 WL 1753376 (Bankr.N.D.Ga. April 12, 2010) ...... 13

*In re Medina*, 09-15725-AJC (Bankr.S.D.Fla.2009) ................................................................ 22

*In re Miller,* 462 B.R. 421 (Bankr.E.D.N.Y.2011) ................................................................ 24

*In re Netal, Inc.,* 498 B.R. 225, 228 (B.A.P. 8th Cir. 2013) ...............................................6

*In re Nice,* 355 B.R. 554 (Bankr.N.D.W.Va.2006) ................................................................ 20

*Nobelman v. Am. Sav. Bank,* 508 U.S. 324 (1993) ................................................................ 21

*In re Hill,* 440 B.R. 176 (Bankr.S.D.Cal.2010) ........................................................ 17, 20, 25

*In re Okosisi,* 451 B.R. 90 (Bankr.D.Nev.2011) ............................................................ 24, 25

*Oregon v. Lange,* 120 B.R. 132 (9th Cir. BAP 1990) ............................................................. 25

*In re Padget,* 119 B.R. 793 (Bankr.D.Colo.1990) ................................................................. 27

*Palomar v. First Am. Bank,* 722 F.3d 992 (7th Cir. 2013) .......................................... 9, 19, 22

*Piazza v. Nueterra Healthcare Physical Therapy, LLC,* 469 B.R. 388 (S.D.Fla.2012) ................. 6

*In re Englander*, 95 F.3d 1028 (11th Cir. 1996)) .................................................................. 6

*In re Pierre,* 468 B.R. 419 (Bankr.M.D.Fla.2012) ................................................................ 19

*In re Pomilio*, 425 B.R. 11 (Bankr.E.D.N.Y.2010) ......................................................... 9, 22

*In re Quezada,* 368 B.R. 44 (Bankr.S.D.Fla.2007)................................................................ 26

*In re Ruppel,* 368 B.R. 42 (Bankr.D.Or.2007).................................................................... 26

*In re Quiros-Amy,* 456 B.R. 140 (Bankr.S.D.Fla.2011) ......................................................... 21

*In re Rabaza,* 08-21571-AJC (Bankr.S.D.Fla.2008) ............................................................. 22

*In re Richins,* 469 B.R. 375 (Bankr.D.Utah 2012) ................................................................ 9

*In re Ricks*, 253 B.R. 734 (Bankr.M.D.La.2000)................................................................. 28

*In re Rodale*, 452 B.R. 290 (Bankr.M.D.Fla.2011) .............................................................. 26

*In re Rogers,* 489 B.R. 327 (D. Conn. 2013)................................................................ 23, 24

*Russello v. United States,* 464 U.S. 16 (1983).................................................................... 18

*Ryan v. Homecoming Fin. Network*, 253 F.3d 778 (4th Cir. 2001)............. **Error! Bookmark not defined.**

*Roberts v. Pierce (In re Pierce),* 435 F.3d 891, 892 (8th Cir.2006) ................................. 6

*S. Beach Mortg. & Inv., Corp. v. Avila*, 2012 WL 2050619 (S.D.Fla.2012)............................... 6

*In re Lentek Int'l, Inc.,* 346 Fed. App'x 430 (11th Cir. 2009)).............................................. 6

*In re Saric,* 2013 WL 6536752 (Bankr.N.D.N.Y.2013) ......................................................... 20

*In re Scantling,* 754 F.3d 132 (11th Cir. 2014)............................................................ 21, 23

*In re Smith,* 2014 WL 3697377 (Bankr.S.D.Ga.2014). ........................................................ 24

*In re Sroka*, 2014 WL 2808101 (Bankr.M.D.Fla. 2014) ....................................................... 18

*In re SW Boston Hotel Venture, LLC*, 748 F.3d 393, 406-07 (1st Cir. 2014).....**Error! Bookmark not defined.**

*In re Talbert*, 344 F.3d 555, 556 (6th Cir. 2003)....................**Error! Bookmark not defined.**, 23

*Tri–State Fin., LLC v. Lovald,* 525 F.3d 649 (8th Cir.2008) ..........................................6

*TD Bank, N.A. v. Landry*, 479 B.R. 1 (D.Mass.2012) .......................................................... 20

*In re Tran*, 431 B.R. 230 (Bankr.N.D.Cal.2010)................................................................. 24

*In re Urban Communicators PCS Ltd. P'ship,* 379 B.R. 232 (Bankr.S.D.N.Y.2007)................... 18

*Urban Communicators PCS Ltd. P'ship v. Gabriel Capital,* 394 B.R. 325 (S.D.N.Y.2008)....... 18

*United States v. U.S. Gypsum Co.,* 333 U.S. 364 (1948) ....................................................6

*In re Valone*, 2014 WL 970024 (M.D. Fla. 2014) ..................................................... 26
*In re Valone*, 500 B.R. 645 (Bankr.M.D.Fla.2013) ................................................. 26
*In re Virello*, 236 B.R. 199 (Bankr.D.S.C.1999) ..................................................... 20
*Wachovia Mortg. v. Smoot*, 478 B.R. 555 (E.D.N.Y. 2012).................................... *passim*
*In re Tomlan,* 102 B.R. 790 (E.D.Wash.1989)).........................1**Error! Bookmark not defined.**
*In re Williams*, 488 B.R. 492 (Bankr.M.D.Ga.2013).............**Error! Bookmark not defined.**, 25
*In re Young*, 390 BR 480 (Bankr.D.Me.2008)........................................................ 18

### STATUTES

11 U.S.C. § 363............................................................................................... 26
11 U.S.C § 348................................................................................................ 21
11 U.S.C. § 506............................................................................................. *passim*
11 U.S.C. § 522............................................................................................ 24, 26
11 U.S.C. § 524............................................................................................... 24
11 U.S.C. § 554............................................................................................... 27
11 U.S.C § 704..................................................................2**Error! Bookmark not defined.**
11 U.S.C. § 727.......................................................................................... 7, 11, 23
11 U.S.C. § 1123.................................................................**Error! Bookmark not defined.**
11 U.S.C § 1125..................................................................**Error! Bookmark not defined.**
11 U.S.C § 1129..................................................................**Error! Bookmark not defined.**
11 U.S.C § 1222..................................................................**Error! Bookmark not defined.**
11 U.S.C § 1322............................................................................................. *passim*
11 U.S.C § 1325............................................................................................. *passim*
28 U.S.C. § 158................................................................................................. 5
Fed.R.Bank.P. 8001(a)........................................................................................ 5
Fed.R.Bankr.P. 8013.......................................................................................... 6
Fla. Stat. § 222.20........................................................................................... 26

### PREFACE

The Record on Appeal is filed under separate cover. The documents within the Record on Appeal are numbered consecutively. References to the Record will follow the form (R. ___) with the underline replaced by the appropriate page designation. Appellant, Space Coast Credit Union will be referred to as "Space Coast." Appellees, Abraham Bertan and Ivon Riera-Bertan will be referred to as the "Debtors."

### STATEMENT OF JURISDICTION

Pursuant to 28 U.S.C. §§ 158(a)(1) and 1334and Fed.R.Bank.P. 8001(a), this Court has jurisdiction over appeals over final judgments, orders and decrees of the Bankruptcy court. This is an appeal from two (2) final orders of the United States Bankruptcy Court of the Southern

District of Florida.  Space Coast Credit Union filed a timely notice of appeal to the district court on July 7, 2014.

## STANDARD OF APPELLATE REVIEW

The applicable standard of review for this case is *de novo*.  A Bankruptcy Court's findings of fact are reviewed for clear error, and conclusions of law are reviewed *de novo*. *See* Fed.R.Bankr.P. 8013. *See In re Fin. Federated Title & Trust, Inc.,* 309 F.3d 1325, 1328-29 (11th Cir. 2002).  "The district court must accept the bankruptcy court's factual findings unless they are clearly erroneous, 'but reviews a bankruptcy court's legal conclusions *de novo*.'" *Piazza v. Nueterra Healthcare Physical Therapy, LLC*, 469 B.R. 388, 390 (S.D.Fla.2012) (*quoting In re Englander*, 95 F.3d 1028, 1030 (11th Cir. 1996)).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948).  Mixed questions of law and fact are also reviewed *de novo*. *S. Beach Mortg. & Inv., Corp. v. Avila*, 1:11-CV-24187-KMM, 2012 WL 2050619 (S.D.Fla.2012) (*citing In re Lentek Int'l, Inc.*, 346 Fed. App'x 430, 433 (11th Cir. 2009)).  "Under *de novo* review, [a] Court independently examines the law and draws its own conclusions after applying the law to the facts of the case, without regard to decisions made by the Bankruptcy Court." *S. Beach Mortg.,* 2012 WL 2050619, at *2 (*citing In re Brown*, No. 08-cv-1517, 2008 WL 5050081, at *2 (M.D.Fla. Nov.19, 2008)) (internal citations omitted).

"The bankruptcy court has discretion regarding whether to hold an evidentiary hearing, and such a decision is reviewed for an abuse of discretion." *In re Netal, Inc.,* 498 B.R. 225, 228 (B.A.P. 8th Cir. 2013), *reh'g denied* (Sept. 16, 2013); *see In re Anthony,* 481 B.R. 602, 615 (D.Neb.2012) (*citing Tri–State Fin., LLC v. Lovald,* 525 F.3d 649, 655 (8th Cir.2008); *Roberts v. Pierce (In re Pierce),* 435 F.3d 891, 892 (8th Cir.2006)). "A court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *In re Chira,* 378 B.R. 698, 710 (S.D. Fla. 2007) *aff'd,* 567 F.3d 1307 (11th Cir. 2009); *see Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1096 (11th Cir. 2004) (internal citations omitted).

## <u>STATEMENT OF THE FACTS</u>

Space Coast is the holder of a home equity line of credit ("HELOC") in the original principal amount of $200,000.00, as secured by a second mortgage ("Mortgage") on homestead property, located at 14016 SW 132nd Avenue, Miami, Florida 33186 (the "Property"). The Mortgage is duly recorded at Official Record Book 24644, Page 4230 in the public records of Miami-Dade County, Florida (R. 106).

On June 20, 2011 ("Petition Date"), the Debtors filed a joint petition for bankruptcy relief under Title 11, Chapter 7 of the United States Bankruptcy Code (R. 1). According to filed Schedule D, Chase Bank USA, N.A. ("Chase") held a first priority mortgage in the Property in the amount of $291,557.55 (R. 16). According to filed Schedule C, the Debtors also claimed the Property as homestead exempt (R. 15).

On September 28, 2011, the Debtors were granted a discharge under 11 U.S.C. § 727 (R. 64). On February 14, 2013, the Chapter 7 Trustee filed a Notice of Assets and the Clerk scheduled a claims bar date of May 16, 2012 (R. 75).

On July 19, 2012, nine (9) months after obtaining a discharge and two (2) months after the claims bar date, the Debtors filed a Motion to Value and Determine Secured Status of Lien on Real Property held by Space Coast (the "Motion to Value") with a copy of the Miami-Dade County Property Appraisal Report dated July 19, 2012 which reflected a market value of $256,308.00 (R. 90-93). Debtors' Motion to Value was based on a recent unpublished ruling in *In re McNeal*, 735 F.3d 1263 (11th Cir. 2012).

On August 13, 2012, Space Coast responded in opposition to Debtors' Motion to Value, arguing that a determination that Space Coast's mortgage was wholly unsecured was, among other things, improper and that a lien cannot be stripped under applicable Chapter 7 law (the "Objection") (R. 95-98). At the continued preliminary non-evidentiary hearing on November 14, 2012 (R. 101), Space Coast further asserted that there was equity in the Property and both parties acknowledged on the record that there was a dispute at to value (R. 202-07). Based on the case law and issue presented by *McNeal*, the Bankruptcy Court instructed the parties to submit competing orders on whether the Motion to Value should be denied or an evidentiary hearing granted (R. 202-207). Subsequently, on January 18, 2013, the Bankruptcy Court granted the Motion to Value without holding an evidentiary hearing to determine Space Coast's secured status (the "Order Granting Motion to Value") (R. 102-105).

On February 1, 2013, Space Coast filed a timely Motion to Reconsider the Order Granting Motion to Value (the "Motion for Reconsideration") (R. 106-131).  In the Motion to Reconsider, Space Coast, among other things, asserted the market value of the Property to be approximately $341,000.00 and again requested an evidentiary hearing be held to properly determine the value of the Property (R. 123).  On June 24, 2014, over fifteen (15) months after the Motion to Reconsider was filed, the Court entered an Order denying Space Coast's Motion for Reconsideration (the "Order Denying Reconsideration") (R. 147-148).

On July 7, 2014, Space Coast timely filed a Notice of Appeal seeking an appeal of the Order Granting Motion to Value and Order Denying Reconsideration (R. 149-157).

On October 12, 2014, Space Coast requested certification for a direct appeal in the Bankruptcy Court (R. 160-187) in order to seek appellate review in the Eleventh Circuit and/or Supreme Court in the most efficient manner, but was subsequently denied by the Court on September 18, 2014 (R. 188-189).

## STATEMENT OF THE CASE AND BACKGROUND

At the time of filing, Debtors' Motion to Value was one of the first[1] in the Southern District of Florida after the previously unpublished ruling in *McNeal v. GMAC Mortgage, LLC*, 735 F.3d 1263 (11th Cir. 2012).[2]  In *McNeal*, the Eleventh Circuit held that its prior decision in *Folendore* controlled analysis of the whether a junior lien is "voidable under the plain language of section 506(d)" when a senior lien exceeds the value of the property. *McNeal*, 735 F.3d at 1265 (*quoting Folendore v. United States Small Bus. Admin.*, 862 F.2d 1537, 1538–39 (11th Cir.1989)). *Folendore* concluded that Section 506(d) allows a chapter 7 debtor to "strip off" a wholly unsecured junior mortgage lien.  The *McNeal* panel acknowledged the Supreme Court's intervening decision in *Dewsnup v. Timm,* 502 U.S. 410 (1992), "which concluded that a Chapter 7 debtor could not 'strip down' a partially secured lien [i.e., a lien that exceeds the value of the collateral] under section 506(d)." *McNeal*, 735 F.3d at 1265.[3]  However, relying on the Eleventh

---

[1] Space Coast's counsel substantially reviewed a complete list of all valuation motions filed in Chapter 7 cases in the Southern District of Florida from June 1, 2012 through June 1, 2014.

[2] By order dated August 2, 2013, the Eleventh Circuit published its decision in *McNeal.*

[3] "In bankruptcy terms, 'strip down' means to reduce the debt amount securing a lien to the value of the collateral. A creditor's claim is described as undersecured in a 'strip down.' 'Strip off' means

Circuit's "prior panel precedent rule"—that "'a later panel may depart from an earlier panel's decision only when the intervening Supreme Court decision is clearly on point'"—the *McNeal* panel concluded that it was bound by *Folendore* notwithstanding *Dewsnup*: "Because *Dewsnup* disallowed only a 'strip down' of a partially secured mortgage lien and did not address a 'strip off' of a wholly unsecured lien, it is not 'clearly on point' with the facts in *Folendore* or with the facts at issue in this appeal." *Id.* (*quoting Atl. Sounding Co., Inc. v. Townsend*, 496 F.3d 1282, 1284 (11th Cir. 2007)). *McNeal* concluded that *Foldendore* remains the "controlling precedent" in this Circuit, despite the Supreme Court's intervening decision in *Dewsnup*, which held that Section 506(d) does not authorize debtors to "strip down" partially unsecured liens from their real property.

In the Order Granting Motion to Value, this Court noted that "[w]hile this Court believed the reasoning in *Dewsnup* was controlling under the circumstances presented in this case, it has come to understand, through *McNeal*, that the Eleventh Circuit Court of Appeals does not believe it is." (R. 104). Other bankruptcy courts have also reluctantly followed *McNeal*'s holding that *Foldendore* remains binding. *In re Malone*, 489 B.R. at 280-81 ("In the absence of the *McNeal* decision, this court would apply *Dewsnup's* § 506(d) analysis to these facts. . . . However, *McNeal* instructs that *Folendore* is controlling law in this circuit."); *In re Williams*, 488 B.R. 492, 496-497 (Bankr.M.D.Ga.2013) (deciding to "follow *McNeal*, even though the Court is persuaded *McNeal* was wrongly decided"); *In re Campbell*, 498 B.R. 370, 372 (Bankr.N.D.Ga.2013) (applying *Folendore* even though it "does not arguably seem to survive under the rationale and holding of *Dewsnup*").

By holding in *McNeal* that *Foldendore*'s ruling that secured debts may be "stripped off" in Chapter 7 cases remains "controlling precedent," the Eleventh Circuit created substantial uncertainty by conflicting with decisions by the only other courts of appeals or bankruptcy appellate panels to have considered the issue—the Fourth, Sixth and Seventh Circuits[4]—in

---

voiding a lien entirely. A creditor's claim is described as wholly unsecured in a 'strip off.'" *In re Malone*, 489 B.R. 275 at n.5 (Bankr.N.D.Ga.2013) *aff'd*, 564 Fed. Appx. 991 (11th Cir. 2014).

[4] *In re Talbert*, 344 F.3d 555 (6th Cir. 2003); *Ryan v. Homecoming Fin. Network*, 253 F.3d 778 (4th Cir. 2001); *In re Laskin*, 222 B.R. 872 (B.A.P. 9th Cir. 1998); *Palomar v. First Am. Bank*, 722 F.3d 992, 995 (7th Cir. 2013).

addition to decisions by a large number of United States bankruptcy and district courts[5] and the reasoning set forth by the Supreme Court in *Dewsnup*, *Johnson* and *Butner*.[6]  The Eleventh Circuit's holding in *McNeal* not only conflicts with decisions by courts in every other circuit to have considered the question, but has also created significant questions concerning the application of Section 506 in Chapter 7 cases, as more fully discussed below.

Between the time *McNeal* was decided and June 1, 2014, at least 700 valuations motions were filed in Chapter 7 cases in the Southern District of Florida.[7]  At present, there are at least 30 other cases presenting similar issues are currently pending in the Eleventh Circuit.[8] Bank of America has filed a Petition for Initial Hearing En Banc in a number of these cases and at least two Petitions for Writ of Certiorari to the Supreme Court are currently pending. *See Bank of Am., N.A. v. Caulkett*, No. 14-10803 (11th Cir. 2014), *petition for cert. filed*, No. 13-1421, 2014 WL

---

[5] *See, e.g.*, *Wachovia Mortg. v. Smoot*, 478 B.R. 555, 565 (E.D.N.Y. 2012); *In re Richins*, 469 B.R. 375 (Bankr.D.Utah 2012); *Cook v. IndyMac Bank (In re Cook)*, 449 B.R. 664 (D.N.J. 2011); *In re Immel*, 436 B.R. 538 (Bankr.N.D.Ill.2010); *In re Caliguri*, 431 B.R. 324 (Bankr.E.D.N.Y.2010) ("Post-*Dewsnup* courts have generally interpreted *Dewsnup* to prohibit chapter 7 debtors from avoiding (stripping off) liens which are wholly undersecured for the same reasons that a chapter 7 debtor may not reduce a secured mortgage claim to the fair market value of the property (stripping down)."); *In re Grano*, 422 B.R. 401 (Bankr.W.D.N.Y.2010); *In re Pomilio*, 425 B.R. 11 (Bankr.E.D.N.Y.2010).

[6] *Johnson v. Home State Bank,* 501 U.S. 78 (1991); *Butner v. U.S.*, 440 U.S. 48 (1979).

[7] *See* footnote 1, *supra.*

[8] *Bank of Am., N.A. v. Belotserkovsky*, No. 14-11012 (11th Cir.); *Bank of Am., N.A. v. Boykins*, No. 13-14908 (11th Cir.); *Bank of Am., N.A. v. Braswell*, No. 13-15777 (11th Cir.); *Bank of Am., N.A. v. Brown*, No. 13-14298 (11th Cir.); *Bank of Am., N.A. v. Buenaseda*, No. 13-15037 (11th Cir.); *Bank of Am., N.A. v. Garro*, No. 14-11676 (11th Cir.); *Bank of Am., N.A. v. Hamilton-Presha*, No. 14-10137 (11th Cir.); *Bank of Am., N.A. v. Johnson*, No. 14-11387 (11th Cir.); *Bank of N.Y. Mellon v. Lang*, No. 14-11373 (11th Cir.); *Bank of Am., N.A. v. Madden*, No. 13-14438 (11th Cir.); *Bank of Am., N.A. v. Peele*, No. 13-15839 (11th Cir.); *Bank of Am., N.A. v. Lakhani*, No. 14-12749 (11th Cir.); *Bank of Am., N.A. v. Evans*, No. 14-12887 (11th Cir.); *Bank of Am., N.A. v. Farmer*, No. 14-12444 (11th Cir.); *Bank of Am., N.A. v. Beursken*, No. 14-12546 (11th Cir.); *Bank of Am., N.A. v. Sardina*, No. 14-12563 (11th Cir.); *Bank of Am., N.A. v. Glaspie*, No. 14-13373 (11th Cir.); *Bank of Am., N.A. v. Allen*, No. 14-13002 (11th Cir.); *Bank of Am., N.A. v. Rayoni*, No. 14-13364 (11th Cir.); *Bank of Am., N.A. v. Corrad*, No. 14-13556 (11th Cir.); *Bank of Am., N.A. v. Hackbart*, No. 14-13532 (11th Cir.); *Bank of Am., N.A. v. Hawkins*, No. 14-13533 (11th Cir.); *Bank of Am., N.A. v. Bogdan*, No. 14-13507 (11th Cir.); *Bank of Am., N.A. v. Langford*, No. 14-14062 (11th Cir.); *Bank of Am., N.A. v. Brantley*, No. 14-14220 (11th Cir.); *Bank of Am., N.A. v. Tower*, No. 14-14222 (11th Cir.); *Bank of Am., N.A. v. Cumpson*, No. 14-13614 (11th Cir.); *Bank of Am., N.A. v. Orea*, No. 14-14358 (11th Cir.).

2213197 (U.S. May 23, 2014); Bank of Am., N.A. v. Toledo-Cardona, No. 13-15855 (11th Cir. 2014), *petition for cert. filed*, No. 14-163 (U.S. Aug. 13, 2014).

Space Coast disputes the correctness of the analysis in *McNeal* and *Foldendore* and expressly reserves its rights in respect thereof. "*Dewsnup* effectively overruled *Folendore*." *In re Swafford*, 160 B.R. 246, 249 (Bankr.N.D.Ga.1993). Although there is no doubt that both *McNeal* and *Foldendore* are binding on the lower courts within this Circuit, the lower courts' difficulty in reconciling *McNeal* and *Dewsnup* strongly suggest that the Eleventh Circuit *en banc* or Supreme Court should reconsider the issue and overrule *McNeal* and *Folendore*.[9]

## STATEMENT WITH RESPECT TO ORAL ARGUMENT

The question presented in this case is controlled by *Folendore*, which the Eleventh Circuit reaffirmed in *McNeal*. Although the issues presented are of significant importance and the judgment of the Bankruptcy Court should be reversed because, among other things discussed *infra*, it conflicts with controlling United States Supreme Court precedent, the publication of the Eleventh Circuit's decision in *McNeal* prevents this Court from providing the relief sought by the Appellant as it relates to the narrow issue of *McNeal* only. Accordingly, while Space Coast would be pleased to appear for oral argument if the Court thinks it helpful, it believes that oral argument before the Court is unnecessary. Space Coast reserves its right to seek *en banc* review and ask the *en banc* Court to overrule *Folendore* and *McNeal*, since those decisions are inconsistent with *Dewsnup* and conflict with rulings from the Fourth, Sixth, and Seventh Circuits.

## STATEMENT OF THE ISSUES PRESENTED

Space Coast's appeal presents the following five (5) related questions:

1. Whether a Chapter 7 debtor is permitted to "strip off" a junior mortgage lien when the value of the property securing that lien is less than the amount of outstanding debt secured by a senior mortgage lien on the property pursuant to 11 U.S.C. §§ 506(a) and (d).

2. Whether, assuming that a Chapter 7 debtor is permitted to strip a junior mortgage lien pursuant to 11 U.S.C. §§ 506(a) and (d), Space Coast, as a junior mortgage lienholder, was

---

[9] On May 20, 2014, the Eleventh Circuit denied GMAC Mortgage, LLC's Petition for Rehearing En Banc. *See In re McNeal*, No. 11- 11352 (11th Cir. May 20, 2014).

deprived of due process of law where Space Coast did not stipulate to the Debtors' valuation, and Space Coast was denied an evidentiary hearing for a formal determination of the value of the subject property.

3.      Whether, assuming that a Chapter 7 debtor is permitted to strip a junior mortgage lien pursuant to 11 U.S.C. §§ 506(a) and (d), the value of the subject property is to be determined as of the petition date or as of the date of the date the valuation motion is filed.

4.      Whether a Chapter 7 debtor is permitted to "strip off" a junior mortgage lien pursuant to 11 U.S.C. §§ 506(a) and (d) after the debtor has been granted a discharge under 11 U.S.C. § 727.

5.      Whether a Chapter 7 debtor is permitted to "strip off" a junior mortgage lien pursuant to 11 U.S.C. §§ 506(a) and (d) after expiration of the claims bar date in an "asset" case.

## ARGUMENT

**I.      *Foldendore* and *McNeal* were wrongly decided and the Bankruptcy Court's decision conflicts with the Supreme Court's reasoning in *Dewsnup*.**

The Supreme Court in *Dewsnup* clearly repudiated *Foldendore's* interpretation of Section 506(d).  Section 506(d) provides, in part, that "[t]o the extend that a lien secured a claim against the debtor that is not an allowed secured claim, such lien is void." 11 U.S.C. § 506(d).  In *Foldendore*, the Eleventh Circuit held that Section 506(d) authorizes a chapter 7 debtor to "strip off" a wholly underwater lien, reasoning that the "plain language" of the statute rendered a lien void to the extent that is exceeded the value of the collateral. *Foldendore*, 862 F.2d at 1539.  *Folendore* reasoned that because Section 506(a) bifurcates undersecured claims, a claim secured by a lien that is wholly underwater is not "allowed secured claim" within the meaning of Section 506(d), and therefore the lien may be "stripped off." *Folendore*, 862 F.2d at 1538-1539.[10]

However, *Dewsnup* made clear that *Foldendore's* reading of the phrase "allowed secured claim" was mistaken.  The Supreme Court observed that the contrary interpretation of Section 506(d), as endorsed by *Foldendore*, was "not plausible" and "contrary to basic bankruptcy principles." *Dewsnup*, 502 U.S. at 420.  As the Supreme Court explained, "the words 'allowed

---

[10] "An 'under-secured lien' refers to a lien that secures a debt that is greater in amount than the value of the underlying collateral. The 'unsecured' portion of an under-secured lien is the amount of the debt above the value of the underlying collateral." *Hoffman*, 433 B.R. at n.9.

secured claim' in § 506(d) need not be read an indivisible term of art defined by reference to § 506(a)," but instead "should be read term-by-term to refer to any claim that is, first, allowed, and second, secured." *See Dewsnup*, 502 U.S. at 415-17. If a claim "has been 'allowed' . . . and is secured by a lien with recourse to the underlying collateral, it does not come within the scope of § 506(d)." *Id.* Read that way, Section 506(d) has the "simple and sensible function of voiding a lien whenever a claim secured by the lien itself has not been allowed." *Id.* at 415-16. "[T]he Court in *Dewsnup* held that a Chapter 7 debtor could not 'strip down' the 'unsecured' portion of an under-secured lien because the claim *as a whole* was still considered an 'allowed secured claim' for purposes of § 506(d). *Dewsnup* thus clarified that § 506(d)'s function is only to void liens 'whenever a claim secured by the lien itself has not been allowed.'" *In re Hoffman*, 433 B.R. 437, 439 (Bankr.M.D.Fla.2010) (emphasis in original) (*citing Dewsnup*, 502 U.S. 415-6), *aff'd sub nom. In re Armstrong*, 6:10-CV-1316-ORL-31, 2011 WL 768080 (M.D.Fla.2011).

Further, Under *Dewsnup*, "§ 506(d) does not allow petitioner to 'strip down' [creditor's] lien, because [creditor's] claim is secured by a lien and has been fully allowed pursuant to § 502." *Wachovia Mortg. v. Smoot*, 478 B.R. 555, 562 (E.D.N.Y 2012) (quoting *Dewsnup,* 502 B.R. at 417). In a Chapter 7 proceeding, whether or not a mortgage lien is deemed an "allowed secured claim" under § 506(d) is not determined with reference to § 506(a), but rather, pursuant to § 502." *Dewsnup,* 502 U.S. at 417. "The claim[] [is] allowed because there is no basis for disallowing the claim[] under 11 U.S.C. § 502. . . . a claim is disallowed if it is 'unenforceable against the debtor *and property of the debtor.*'" *In re Gerardin,* 447 B.R. 342, 347 (Bankr.S.D.Fla.2011) (emphasis in original) (citing 11 U.S.C. § 502(b)(1) and *Dewsnup*). "Under Florida law, the creditors' mortgage liens are enforceable against the Debtors' property." *Id.*

"A lien *cannot* be modified under § 506(d) if the claim that it secures is an allowed claim. Section 506(d) prescribes a number of special rules governing the avoidance of liens that secure disallowed claims." *Gerardin*, 447 B.R. at 347. "[T]he Supreme Court's decision in *Dewsnup* instructs that § 506 alone does not operate to void a lien securing an allowed claim." *Gerardin,* 447 B.R. at 347; *see, e.g., In re Laskin,* 222 B.R. 872, 876 (9th Cir. BAP 1998) ("*Dewsnup* teaches that, unless and until there is a claims allowance process, there is no predicate for voiding a lien under § 506(d)."). "§ 506(d) is not the miracle lien remover the Debtors want it to be. It is not self-executing. If § 506 alone could strip a lien securing an allowed claim, it would be applicable in Chapter 7. Under *Dewsnup,* that is not the law. A debtor valuing collateral under § 506(a) must

apply that valuation in conjunction with another section of the Bankruptcy Code." *Gerardin,* 447 B.R. at 346; *see Harmon v. United States,* 101 F.3d 574, 581 (8th Cir.1996) (*Dewsnup* "holds only that § 506(d) does not itself provide the authority for a debtor to strip down liens"); *In re McNeal,* No. A09–78173–PWB, 2010 WL 1753376, at *3 (Bankr.N.D.Ga. April 12, 2010) ("§ 506 provides no independent power for a debtor to avoid a lien").

Therefore, *Folendore* could not have survived *Dewsnup*.  Indeed, the Court in *McNeal* acknowledged that *Dewsnup*'s reasoning "seem[ed] to reject" that "analysis that we used in Foldendore." *McNeal,* 735 F.3d at 1265.  However, *McNeal* opined that "[b]ecause Dewsnup allowed only a 'strip down' of a partially secured mortgage lien and did not address a 'strip off' of a wholly unsecured lien, it is not 'clearly on point' with the facts in *Foldendore*," and therefore *Folendore* remained binding under the Eleventh Circuit's prior panel decision. *Id.*

However, under the reasoning of *Dewsnup*, the distinction drawn by *McNeal* makes no difference.  *Dewsnup* interpreted Section 506(d) to apply only "whenever a claim secured by the lien itself as not been allowed." 502 U.S. at 415.  Just as in *Dewsnup*, the creditor's claim in *Foldendore* and *McNeal* was concededly valid: the debtor entered into a pre-petition valid security agreement with the mortgagee to borrow money secured by a note and lien on the debtor's real property.  As D*ewsnup* made clear, the fact that mortgage is underwater matters only to the treatment of the creditor's claim under Section 506(a)—the portion of the claim exceeding the value of the debtor's property is treated as unsecured.  It has no effect on the treatment of the creditor's lien under Section 506(d).  Rather, consistent with well-established law, "liens pass through bankruptcy unaffected" unless the underlying claim is disallowed, and "[a]my increase over the judicially determined valuation" of the collateral "during bankruptcy rightly accrues to the benefit of the creditor." *Dewsnup,* 502 U.S. at 417.  Logically, this is true regardless whether, in light of the present value of the property, the lien is partially or wholly unsecured.

There has never been any dispute that Space Coast's lien is valid and enforceable against the Debtors under applicable state law, and should never have been "stripped off" under *Dewsnup*'s correct interpretation of Section 506(d).  However, in light of *McNeal*, the resolution of Space Coast's interest in the Property may be entirely dependent on one main pure question of law of whether the junior lien on the Property survives the Debtors' bankruptcy discharge, notwithstanding the value of the Property as of the Petition Date.  *McNeal*, now published, is plainly binding on this Court such that a challenge to its reasoning in this Court is essentially futile.

Such a challenge would appropriately be heard in the Eleventh Court of Appeals or the Supreme Court. Accordingly, Space Coast expressly reserves its right in respect thereof, including the right to appeal any order or decision by this Court.

**II.      Space Coast did not concede to the value of the Property and was prejudiced by the Bankruptcy Court's abuse of discretion in failing to allow an exchange of formal appraisals and evidentiary hearing to determine the value of the Property.**

Although the Bankruptcy Court determined that the value asserted by the Debtors is "undisputed" (R. 103; 105), the record does not support this finding (R. 202-07; 106-117; 123-24). Space Coast's failure to assert an alternative value in its initial objection should not have been construed as a concession to the Debtors' value (R. 95-98).[11] Space Coast filed a timely objection to the Motion to Value asserting that it was legally insufficient and as such, the only issue before the Bankruptcy Court was whether, as a matter of law, the Debtors would be permitted to strip Space Coast's lien in a Chapter 7 case (R. 95-98). The Bankruptcy Court ordered the parties to submit competing orders "on the issue of whether or not the matter should be denied or an evidentiary hearing granted." (R. 207). At no time during the pendency of the proceedings did Space Coast concede to the Debtors' valuation of the Property (R. 111-112) and, in fact, disputed this at the November 14, 2014 preliminary hearing (R. 202-3; 206).

Following the Hearing, the Bankruptcy Court granted Debtors' Motion to Value and found the value of the first mortgage held by Chase to be $291,557.00 and the Property to be $262,834.00 as determined by the Miami-Dade County Property Appraiser (R. 103; 105); however, the Court made this finding without conducting an evidentiary hearing contrary to disputed issues of material fact raised by Space Coast at the November 14, 2012 hearing (R. 203; 206).[12] The procedure generally followed in this district and others on motions to value is that the parties present argument at a preliminary hearing and after the legal issues are decided and the value is disputed, the motion is set for an evidentiary hearing. *See* S.D.Fla.L.B.R. 3015-3(3) ("Objections to the debtor's proposed valuation pursuant to 11 U.S.C. §506(a), shall be heard at the evidentiary hearing

---

[11] Space Coast reserved its right to supplement the Objection in paragraph 10 and did not waive any future defenses to the Motion to Value (R. 97).

[12] The Bankruptcy Court held "It is also undisputed that Chase Bank USA, N.A. holds a lien on the Property, super to that of Space Coast, in the amount of $291.557." (R. 103). Space Coast did, in fact, dispute this at the November 14, 2011 final preliminary hearing (R. 206).

set on the motion to value collateral."); *see also In re Sadala*, 294 B.R. 180, 182 (Bankr.M.D.Fla.2003) ("A separate evidentiary hearing is needed to resolve . . . disputed valuation issues.")  Further, "[a] contested matter hearing under Rule 9014, as amended in 2002, 'ordinarily requires trial testimony in open court with respect to disputed material factual issues in the same manner as an adversary proceeding.'" *In re Caviata Attached Homes, LLC*, 481 B.R. 34, 44 (B.A.P. 9th Cir. 2012) (*citing Khachikyan v. Hahn (In re Khachikyan),* 335 B.R. 121, 126 (9th Cir. BAP 2005)).

Here, the Bankruptcy Court summarily granted the Debtors' Motion to Value without giving the Space Coast an opportunity to obtain a formal appraisal and present evidence at an evidentiary hearing to dispute the value asserted by the Debtor.  Neither party obtained or exchanged expert appraisal reports.  The Bankruptcy Court merely relied upon the Miami-Dade Property Appraiser report submitted by Debtors (R. 90).  In an unrelated case, the same Bankruptcy Court stated that "[t]he Court recognizes that the values set forth by the Miami–Dade County Property Appraiser may be less than what the actual market value is, by as much as 15%." *In re A-1 Mgmt. Corp.,* 11-30042-BKC-AJC, 2011 WL 5509262, at *2 (Bankr.S.D.Fla.2011) (Cristol, J.).  If that is the case, then the difference between $262,834.00 and $291,557.00 is approximately 11% which means a 15% increase to $262,834.00 would undoubtedly result in a value establishing equity in the Property above the amount owed to Chase.

"In a motion to value collateral under 11 U.S.C. § 506(a) the debtor bears the initial burden of proof." *See In re Fletcher*, No. 07-10597, 2007 WL 1804931,*2 (Bankr.S.D.Fla. June 19, 2007); *see also In re Wcislak*, 417 B.R. 24, 28 (Bankr.N.D.Ohio 2009) ("A debtor bears the burden of proof on the issue of valuation under § 506(a)."); *In re Hall*, 495 B.R. 393, 396 (Bankr.N.D.Ill. 2013) ("The Debtors bear the burden as the moving party to demonstrate that 'there is not even one dollar of value' in the Property to support Brendan Financial's lien. . . . Once the Debtors' burden has been met, Brendan Financial must submit sufficient evidence to overcome the Debtors' valuation.") (internal citations omitted); *In re Hernandez*, 493 B.R. 46, 50 (Bankr.E.D.Ill.2013) ("[V]aluation of assets is not 'not an exact science' . . .  'it requires consideration of the purpose of the valuation and all the factual elements of a particular case." . . . 'A judge should look to the accuracy, credibility and methodology employed by the appraisers.'") (internal citations omitted).

It is clear from the record on appeal that the Bankruptcy Court did not have sufficient undisputed evidence before it to issue its ruling without an evidentiary hearing and abused its

discretion in denying Space Coast's request for evidentiary hearing. See *In re Caviata*, 482 B.R. at 46; see also *In re Int'l Fibercom, Inc.,* 503 F.3d 933, 939 (9th Cir. 2007); *Murphy v. Schneider Nat'l, Inc.,* 362 F.3d 1133, 1139 (9th Cir. 2004). Space Coast submits that it has been denied due process and that the Order Granting Motion to Value should be reversed to allow Space Coast to obtain a formal valuation of the Property and present evidence that it remains either partially or wholly secured.

"The District Court is not 'authorized to make independent factual findings; that is the function of the bankruptcy court.'" *In re Air Safety Intern., L.C.,* 308 B.R. 90, 95-96 (S.D.Fla.2003) (*citing In re Sublett,* 895 F.2d 1381, 1384 (11th Cir.1990) ("If the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the district court . . . must remand the case to the bankruptcy court for the necessary factual determination") (internal quotes and citations omitted). Accordingly, this case should be remanded to the Bankruptcy Court for an evidentiary hearing on the factual issue of whether there is equity in the Property which would prevent a "strip off" of Space Coast's junior mortgage. Space Coast should have the opportunity to present evidence at an evidentiary hearing which will demonstrate its entitlement to keep its lien.

## III.    The Bankruptcy Court should use a flexible approach under 11 U.S.C. § 506(a) to determine the effective date of valuation for purposes of "stripping off" Space Coast's junior mortgage lien.

Part of the determination of value in this case involves at what point in time the Property should be valued. While the Eleventh Circuit in *McNeal* found nothing in *Dewsnup* or the Bankruptcy Code that conflicts with its holding of allowing the strip off of a wholly unsecured junior lien in a Chapter 7 case under Sections 506(a) and 506(d), the Eleventh Circuit failed to address or otherwise resolve the issue of when valuation is determined in these circumstances. *Dewsnsup v. Timm*, 502 U.S. 410, 417 (1992); *In re McNeal*, 735 F.3d 1263 (11th Cir. 2012).

Section 506(a) provides no clear answer as to the date of valuation. *In re Gutierrez*, 503 B.R. 458, 460 (Bankr.C.D.Cal.2013). Section 506(a)(1) states, in part that "value shall be determined in light of the purposes of the valuation and of the *proposed use or disposition of such property*, and in *conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest*." 11 U.S.C. § 506(a) (emphasis added).

In *Brown*, the Eleventh Circuit stated "the Supreme Court interpreted 'disposition or use' as requiring different valuation standards depending on whether the collateral was surrendered or

retained" and that "§ 506(a)(2) specifies how to value certain property in Chapter 7 and 13 cases, while § 506(a)(1) is more broadly worded and says nothing about Chapter 7 and 13 cases." *In re Brown,* 746 F.3d 1236, 1239-41 (11th Cir. 2014) (*citing Assocs. Comm. Corp. v. Rash*, 520 U.S. 953, 962 (1997)); *see* 11 U.S.C. § 506(a)(2) (value of certain personal property is determined "as of the date of filing of the petition").  A specific reference to the petition date in paragraph (2) of the statute does not mean that the petition date is prohibited under paragraph (1)—it simply leaves the appropriate date of valuation under paragraph (1) to the discretion of the bankruptcy courts. *Gutierrez,* 503 B.R. at 460; *see In re Marsh,* 929 F.Supp.2d 852, 855–56 (N.D.Ill.2013); *see In re Cahill,* 503 B.R. 535, 539 (Bankr.D.N.H.2013) ("Section 506(a) does not direct a court to make the value determination at a fixed or predetermined time. . . . Rather, it leaves a court with discretion to value the property looking to the 'purpose of the valuation,' and how the property is to be used.")

"The fact that Congress mandated particular measuring dates in the exception without mandating a particular measuring date in the general rule suggests that it intended flexibility under § 506(a)(1)." *In re SW Boston Hotel Venture, LLC*, 748 F.3d 393, 406-07 (1st Cir. 2014); *see Russello v. United States,* 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (alteration and internal quotation marks omitted); *see also In re Urban Communicators PCS Ltd. P'ship,* 379 B.R. 232, 243 (Bankr.S.D.N.Y.2007) ("The statutory guidance appearing as part of section 506(a) is the antithesis of a hard-and-fast rule, and instead embodies a more functional approach."), *aff'd in part, rev'd in part on other grounds sub nom. Urban Communicators PCS Ltd. P'ship v. Gabriel Capital, L.P.,* 394 B.R. 325 (S.D.N.Y.2008).

Courts have used three different approaches as to when the valuation for purposes of a mortgage strip off is determined: (1) some courts use the petition date on the logic that the debtors typically use the property as their residence throughout the bankruptcy beginning with the petition date. *See, e.g., In re Dean*, 319 B.R. 474 (Bankr.E.D.Va.2004); (2) other courts use the effective date of the plan because the valuation is being done in the context of determining the amount of the mortgagee's allowed secured claim for purposes of plan confirmation. *See, e.g., In re Crain*, 243 B.R. 75 (Bankr.C.D.Cal.1999); (3) some courts use a flexible approach, rather than a single fixed method. *See, e.g., In re Aubain*, 296 B.R. 624 (Bankr.E.D.N.Y.2003).

Almost every case recognizing the petition date as the effective date of valuation for real property under § 506(a)(1) where the debtors intend to retain the collateral involves Chapter 13 or 11 cases.[13]   Unlike Chapter 13 cases, where debtors propose a plan of reorganization which must meet the liquidation or best interest of creditors test under 11 U.S.C. § 1325(a)(4), a Chapter 7 is "liquidation chapter" and are generally not asset cases, meaning there is nothing to liquidate and unsecured creditors are *never* repaid. *Wachovia Mortg. v. Smoot*, 478 B.R. at 560 ("The purpose of Chapter 13 is 'to serve as a flexible vehicle for the repayment of part or all of the allowed claims of the debtor.'") (*citing In re Tomlan,* 102 B.R. 790, 792 (E.D.Wash.1989)); *see In re Pierre,* 468 B.R. 419, 424-25 (Bankr.M.D.Fla.2012) ("The purpose of Chapter 13 is to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period. In some cases, the plan will call for full repayment. In others, it may offer creditors a percentage of their claims in full settlement.").

Chapter 7 of the Bankruptcy Code permits eligible debtors to obtain a "discharge of prepetition debts following the liquidation of the debtor's [non-exempt] assets by a bankruptcy trustee, who then distributes the proceeds to creditor." *Marrama v. Citizens Bank of Mass*., 549 U.S. 365, 367 (2007).  "The difference between Chapter 13 (also Chapter 11) and Chapter 7 is the difference between reorganization and liquidation. In the latter type of bankruptcy the debtor surrenders his assets (subject to certain exemptions) and in exchange is relieved of his debts (with certain exceptions), thus giving him a 'fresh start.' But in a reorganization the assets are not sold—the enterprise continues—though ownership is transferred from the debtor to his creditors. Chapter 13 is only analogous to a reorganization; the debtor does not become a slave. But unlike what happens in a Chapter 7 bankruptcy, his assets are not sold; instead he pays his creditors, over a three- or five-year period, as much as he can afford. 11 U.S.C. § 1325(b). Often this makes the creditors better off than they would be in a liquidation, for the assets, though important to the debtor, may have little market value." *Palomar v. First Am. Bank,* 722 F.3d 992, 995 (7th Cir. 2013).  "[I]n a Chapter 7 case, the purpose and intent is liquidation with the aim of the debtor to receive a discharge. Thus, to allow the strip off of wholly unsecured junior mortgages in Chapter 13 'better serves the policy imperatives of the Bankruptcy Code by encouraging debtors to first

---

[13] Other than *In re Sroka*, 2014 WL 2808101 (Bankr.M.D.Fla. 2014) (Chapter 7 cases cited in support are actually Chapter 13 cases); *see, e.g., In re Young*, 390 BR 480 (Bankr.D.Me.2008)) and *In re Kennedy*, 2013 WL 3338569 (Bankr.M.D.Fla.2013).

consult Chapter 13 before seeking either to reorganize pursuant to the more expensive and cumbersome Chapter 11 or liquidate pursuant to Chapter 7.'" *Smoot,* 478 B.R. at 569 (*citing In re Bartee,* 212 F.3d 277, 294–95 (5th Cir. 2000)); *see also Bartee*, at 291 n. 21 ("The rationales advanced in the *Dewsnup* opinion for prohibiting lien stripping in Chapter 7 bankruptcies . . . have little relevance in the context of rehabilitative bankruptcy proceedings under Chapters 11, 12, and 13, where lien stripping is expressly and broadly permitted, subject only to very minor qualifications. The legislative history of the Code makes clear that lien stripping is permitted in the reorganization chapters.").

Reorganization chapters of the Code also have their own statutory schemes for lien stripping that apply only to debtors who file under those chapters. *In re Saric,* 2013 WL 6536752 at *6 (Bankr.N.D.N.Y.2013); *see, e.g.,* 11 U.S.C. §§ 1123(b)(5); 1222(b)(2) and 1322(b)(2). There are no comparable statutes for Chapter 7 cases. "No parallel provision applies in Chapter 7." *In re Grano*, 422 B.R. 402, 403 (Bankr.W.D.N.Y. 2010).[14]

While many Courts believe the beginning of the bankruptcy case is the logical point to establish (to the extent reasonably possible) the debtor's and creditor's rights, it is highly likely that the value of the collateral will increase or decrease over the course of the proceeding. *TD Bank, N.A. v. Landry*, 479 B.R. 1, 7 (D.Mass.2012) (*citing Johnson v. GMAC*, 165 B.R. 524, 528 (S.D.Ga.1994)); *see, e.g. Cahill*, 503 B.R. at 541 (analyzing the issue, in part, as it relates to the best interests of creditors test under 11 U.S.C. § 1129(a)(7)(A)). For reorganization chapters, the petition date may be the appropriate date to value a debtor's principal residence because the retained property is being provided for or treated pursuant to a plan during the course of the case; permitting a valuation date removed from the petition date could potentially allow creditors to disrupt the confirmation process—a necessary step to modifying the rights of a secured creditor and obtaining a "fresh start." *See Johnson,* 165 B.R. at 528 ("[T]he scheme of Chapter 13 in attempting to accommodate competing goals of financial rehabilitation for the debtor and preservation of the constitutionally protected, bargained-for rights of secured creditors is best served by valuing the collateral as of the date of filing. . . The date the petition is filed and the bankruptcy case is commenced is the point where the secured creditor's rights are first impacted

---

[14] "If a claim is allowed, § 506(a) must be used in connection with another statute, such as § 722, § 1129, § 1125, or . . . § 1325." *Gerardin,* 447 B.R. 347-48; *In re Virello,* 236 B.R. 199, 204 (Bankr.D.S.C.1999).

by the bankruptcy and the tension between adequate protection of such rights and a meaningful chance at rehabilitation under Chapter 13 for the debtor begins.") In Chapter 13 cases, determining the parties' rights early may discourage them from improperly delaying or accelerating the proceeding (or using other improper tactics) to change their substantive legal rights. *Landry,* 479 B.R. at 7*; see In re Nice,* 355 B.R. 554, 563 (Bankr.N.D.W.Va.2006) ("[T]he total amount of the creditor's allowed claim, which is determined as of the petition date, is important for determining the extent to which, on request, a creditor is entitled to adequate protection. Adequate protection is solely a function of preserving the value of the creditor's secured claim as of the petition date due to a debtor's continued use of collateral."); *see also In re Crain,* 243 B.R. 75, 82–83 (Bankr.C.D.Cal.1999) (determining that "valuation should occur on or near the time of the chapter 13 confirmation hearing" while distinguishing a case that "utilized the date of the filing of the petition as the appropriate date for determining the extent of the lender's collateral for purposes of § 1322(b)(2) only."); *In re Farmer,* 257 B.R. 556, 561–62 (Bankr.D.Mont.2000) (valuing the collateral as of the petition date for adequate protection purposes, and as of the confirmation date for purposes of cramdown).

In Chapter 13 case, if the plan is never confirmed or successfully completed, then the debtor will never receive the benefit of the strip off or obtain a discharge which extinguishes the creditor's *in personam* and *in rem* remedies. *See* 11 U.S.C. § 1325(a)(5) ("with respect to each allowed secured claim provided for by the plan . . . the holder of such claim retain the lien securing such claim until the earlier of the payment of the underlying debt determined under nonbankruptcy law; or discharge under section 1328 . . ."). As the Court in *In re Quiros-Amy* stated:

> Reflecting on the pre-BAPCPA question of "whether a secured creditor whose lien was reduced under § 506(a) retained the lien until the end of a plan," *Gerardin* explained that this was "resolved in BAPCPA by amendments to § 1325(a)(5) and § 348." *Id.* at 351. Specifically quoting the BAPCPA-enacted subsection (C)(i) of § 348(f)(1), the court deduced: "This change makes it clear that lien strips are ineffective upon conversion of a chapter 13 case to chapter 7." *Id.* The court further reasoned: "The language added to § 1325(a)(5) in BAPCPA is consistent with and works in tandem with § 348 by clarifying that the lien existing on the filing date remains in place until the debt is discharged or paid in full ... and by specifically providing that the lien on the petition date remains intact if the case is dismissed or converted ... Thus, there is no doubt that Congress fully intended for lien strips ... to be dealt with under § 1325(a)(5)." *Id.; see* 11 U.S.C. § 1325(a)(5)(B)(i)(II) ("if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law"). ... Referring to *Nobelman* and *Dewsnup, Gerardin*

21

notes that "Congressional intent favorable to secured creditors has been acknowledged with deference by the U.S. Supreme Court, which twice has entered decisions plainly designed to protect home lenders." *Gerardin,* 447 B.R. at 351; *see also Dewsnup v. Timm,* 502 U.S. 410, 420, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) ("... given the ambiguity here, to attribute to Congress the intention to grant a debtor the broad new remedy ... without the new remedy's being mentioned somewhere in the Code itself or in the annals of Congress is not plausible, in our view, and is contrary to basic bankruptcy principles").

*In re Quiros-Amy*, 456 B.R. 140, 146-47 (Bankr.S.D.Fla.2011), *abrogated by In re Scantling*, 754 F.3d 1323 (11th Cir. 2014). There is no proposed plan of reorganization in the present case. The myriad reasons for limiting the measuring date to the petition date when valuing real property in reorganization cases are inapplicable to cases filed under Chapter 7. A Chapter 7 is a liquidating proceeding where unsecured creditors generally get nothing, including adequate protection, and therefore there are no competing goals concerning financial rehabilitation or opposing interests of secured and unsecured creditors. "[It] is important to consider that chapter 7 provides relief for a debtor through liquidation, not reorganization. In a chapter 7, a debtor's options for treating property are limited to redemption, reaffirmation, or surrender." *In re Malone*, 489 B.R. at 284 (internal citations omitted) (*citing In re Taylor,* 3 F.3d 1512, 1516 (11th Cir.1993)).

Here, Debtors filed their Motion to Value over nine (9) months after the Petition Date. Space Coast submits that in Chapter 7 proceedings the value of real property should be determined at or near the preliminary hearing on the motion to value or subject to a flexible approach, especially in instances where the debtors file dilatory motions to value months or years after the petition date.[15] This is consistent with the Supreme Court's reasoning in *Dewsnup* that "[a]ny increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor and not to the benefit of other unsecured creditors whose claims have been allowed and who had nothing to do with the mortgagor-mortgagee bargain." *Dewsnup*, 502 U.S. at 417; *see In re Pomilio*, 425 B.R. 11, 15 (Bankr.E.D.N.Y.2010) ("[A]ny increase in the value of the property would inure to the benefit of the secured creditor.

---

[15] Since *McNeal*, numerous Chapter 7 debtors have reopened their closed, fully administered and discharged cases to file motions to value. *See, e.g., In re Aragon*, 09-27916-RAM (Bankr.S.D.Fla 2009); *In re Medina*, 09-15725-AJC (Bankr.S.D.Fla.2009); *In re Campos*, 09-24546-AJC (Bankr.S.D.2009); *In re Rabaza,* 08-21571-AJC (Bankr.S.D.Fla.2008); *In re Blanco,* 09-18337-LMI (Bankr.S.D.2009).

This is what the parties had bargained for at the outset.") (*citing Dewsnup*).

In Chapter 13 cases, stripped off junior lienholders who file a proof of claim at least receive a minimum pro rata distribution through the plan as a general unsecured creditor pursuant to § 1325(a)(4), thereby receiving some benefit over the life of the plan, albeit often nominal. *See Palomar v. First Am. Bank*, 722 F.3d 992, 995 (7th Cir. 2013) ("The strip-off right in Chapter 13 is a partial offset to the advantages that Chapter 13, relative to Chapter 7, grants creditors, such as access to a larger pool of assets because the debtor must commit all disposable income for three to five years to repaying his unsecured debts. 11 U.S.C. § 1325(b)(1)(B)").  A "strip off" in Chapter 7 completely robs the mortgagee of the bargain it struck with the mortgagor, i.e., that the consensual lien would remain with the property until foreclosure. *In re Talbert*, 344 F.3d 555, 556 (6th Cir. 2003) ("Chapter 7 'strip offs' carry the risk of a 'windfall' to the debtors should the value of the encumbered property increase by the time of the foreclosure sale."); *see Smoot*, 478 B.R. at 562 ("to freeze the creditor's secured interest at the judicially determined valuation—would practically result in a "windfall" to the benefit of the debtor if there was an increase in the value of the property.")

Since *McNeal*, Chapter 7 debtors who delay in their efforts to eliminate a creditor's *in personam* and *in rem* rights should not receive the inequitable benefit of a retrospective valuation date due to their own inexcusable indolence.  Further, as discussed below, Chapter 7 debtors who, years later, attempt to reopen their fully administered cases to value their second mortgage obligations should similarly be prevented from realizing an unjust windfall by utilizing a stale valuation date.  Accordingly, this case should be remanded to the Bankruptcy Court for an evidentiary hearing on the factual issue of whether there is equity in the Property as of the date of the first preliminary hearing on the Motion to Value—not the Petition Date.

## IV.   Debtors should not be permitted to "strip off" Space Coast's junior mortgage lien after being granted a discharge under 11 U.S.C. § 727.

Unlike *McNeal*, the Debtors here filed their Motion to Value nine (9) months after their discharge was entered.  While *McNeal* permitted a strip off under Section 506, it did not address the issues concerning the significance of obtaining a discharge in a Chapter 7 case to effectuate the lien strip or filing a valuation motion after a discharge has already been entered.  Recently, the Eleventh Circuit raised the issue of whether a discharge is necessary at all:

This strip off is accomplished through the § 506(a) valuation procedure that determines that the creditor does not hold a secured claim. Once this determination

has been made, pursuant to § 1322(b)(2), the creditor's "rights" are modified by avoiding the lien to which the creditor would otherwise be entitled under nonbankruptcy law. Under such analysis, § 1325(a)(5) is not involved, and the debtor's ineligibility for a discharge is irrelevant to a strip off in a Chapter 20 case. The BAPCPA did not amend §§ 506 or 1322(b), so the analysis permitting strip offs in Chapter 20 cases is no different than that in any other Chapter 13 case.

*In re Scantling*, 754 F.3d 1323, 1329-30 (11th Cir. 2014). Thus, if a debtor can enjoy the benefit of a strip off in a Chapter 13 without obtaining a discharge, is the same conclusion also reached in a Chapter 7? Especially since there is no corresponding provision of the Code such as § 1322(b)(2)? *See In re Rogers,* 489 B.R. 327, n.10 (D.Conn. 2013) ("If a discharge is necessary, then not only would such no-discharge Chapter 13 cases cease to have any practical purpose: they would likely be prohibited"); *see also In re Davis*, 716 F.3d 331, 338 (4th Cir. 2013) ("[T]he lien-stripping orders at issue here alter *in rem* liability where the creditor's lien has no value. For that reason we are persuaded that, upon completion of the plan, its provisions—including any orders stripping off valueless liens—become permanent, even in the absence of a discharge."); *see, e.g., In re Miller,* 462 B.R. 421, 433 (Bankr.E.D.N.Y.2011) ("[O]nly upon the completion of the plan payments may a debtor strip off an inferior wholly unsecured mortgage lien. . . ."); *Frazier v. Real Time Resolutions, Inc.,* 469 B.R. 889, 900 (E.D.Cal.2012) ("The lien strip will become permanent not upon a discharge, as would happen in a typical Chapter 13 case, but upon completion of all payments as required by the plan."); *In re Okosisi,* 451 B.R. 90, 103 (Bankr.D.Nev.2011) ("The permanence of the lien avoidance is conditioned upon the successful completion of all plan payments."); *In re Tran,* 431 B.R. 230, 236–37 (Bankr.N.D.Cal.2010) ("[T]he court can condition any permanent modification or stripping on the debtor's performance and completion of the debtor's chapter 13 plan."); *In re Fisette,* 455 B.R. 177, 185 (8th Cir. BAP 2011) ("We hold that the strip off of a wholly unsecured lien on a debtor's principal residence is effective upon completion of the debtor's obligations under his plan. . . ."), *appeal dismissed,* 695 F.3d 803 (8th Cir.2012).

"A debtor's fresh start is attained by the issuance of a discharge." *In re Malone*, 489 B.R. at 284. "That fresh start is achieved at the end of the bankruptcy case by the entry of discharge of certain specific debts." *In re Smith*, 2014 WL 3697377 at n.11 (Bankr.S.D.Ga.2014). "The bankruptcy discharge creates something akin to nonrecourse debt. After the discharge is granted, personal liability on a debt is removed." *In re Okosisi*, 451 B.R. 90, 96 (Bankr.D.Nev.2011) ("Discharge 'operates as an injunction against the commencement or continuation of an action, the

employment of process, or an act, to collect, recover or offset any such debt *as a personal liability of the debtor.*'") (*citing* 11 U.S.C. § 524(a)(2)).   "However, the discharge itself has no affect on liens, and the creditor is free to foreclose upon the case's conclusion without violating the discharge injunction." *Id.* (*citing Johnson v. Home State Bank,* 501 U.S. 78, 84 (1991)) ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim-namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem.*"); *see Johnson,* 501 U.S. at 83 ("A creditor's right to foreclose on the mortgage survives or passes through the bankruptcy") (*citing* 11 U.S.C. § 522(c)(2)); *In re Rogers,* 489 B.R. 327, 334 (D.Conn.2013)) ("The *in rem* lien on the real property is wholly separate from the debtor's personal liability on the property: the former gives a creditor recourse as to the property itself, independent of any personal liability of the debtor.")   "Any deficiency that remains after the creditor forecloses on its liens and sells the property continues to exist, but is an uncollectible debt." *Okosisi,* 451 B.R. at 96 (internal citations omitted) (*citing In re Hill,* 440 B.R. 176, 182 (Bankr.S.D.Cal.2010); *Johnson,* 501 U.S. at 86); *see In re Davis,* 716 F.3d 331, 340 (4th Cir. 2013).

"Bankruptcy Code § 506(a) provides that a claim 'is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property.'" *In re Martin,* 497 B.R. 349, 351 (Bankr.M.D.Fla.2013).   "[I]t is evident from a reading of § 506(a) that determinations of 'allowed secured claims' under that section are limited to 'property in which the estate has an interest,' thereby excluding property released to the debtor as exempt or abandoned." *In re Israel,* 112 B.R. 481, 485 (Bankr.D.Conn.1990) (*citing In re D'Angona,* 107 B.R. 448, 450 (Bankr.D.Conn.1989)).[16]   "Section 506(d) of the Code cannot be used to avoid a lien on property

---

[16] There is also a question of whether § 506(d) confers standing on debtors to avoid an unsecured junior mortgage lien. *See Pomilio*, 425 B.R. at 13 ("The Supreme Court "implicitly adopted" the analysis that "§ 506(d) confers no standing on anyone" to avoid a lien; it merely "'provides the avoidance consequences of implementing a host of discrete powers conferred in other parts of the Code rather than acting as an avoiding power per se.'") (*citing Laskin,* 222 B.R. at 875) (*quoting Oregon v. Lange,* 120 B.R. 132, 135 (9th Cir. BAP 1990)). "The standing conferred upon Chapter 7 debtors is limited to avoidance of non-consensual liens which impair the debtor's applicable exemption, and does not apply to mortgage liens." *Pomilio,* 425 B.R. at 17 ("The Debtors are correct that the *Dewsnup* Court did not rule on whether abandonment of the property by the Chapter 7 trustee affected the debtor's right or standing to avoid a lien on such property. The issue regarding standing does not turn on whether the property is "property of the estate" or whether it

which is not property of the estate." *In re Catalano*, 510 B.R. 654, 657-58 (Bankr.M.D.Fla.2014). Further, "[t]he allowance of a secured claim, or determination of secured status is meaningless in a chapter 7 where the trustee is not disposing of the putative collateral." *Malone,* 489 B.R. at 281; *In re Laskin,* 222 B.R. at 876.  "§ 506(a) serves no function in a no-asset Chapter 7 case. Logically, it should only apply when the case provides a distribution to unsecured creditors. In such circumstances § 506(a) determines the extent to which an undersecured creditor will participate in the distribution." *In re Williams,* 488 B.R. 492, 497 (Bankr.M.D.Ga.2013); *see In re Green*, 348 B.R. 601, 608 (Bankr.M.D.Ga.2006) ("In a Chapter 13 bankruptcy reorganization, the stripping of liens is followed by an equitable distribution of assets. With no distribution, there would be no purpose in bifurcating the claim between secured and unsecured. *Dewsnup* was a no-asset Chapter 7 case. As a result, there was no distribution to creditors and consequently no bankruptcy purpose in valuing the collateral and bifurcating the claim."), *abrogated on other grounds by In re Dean*, 537 F.3d 1315 (11th Cir. 2008).

"In a Chapter 7 case, all property belonging to the debtor as of the commencement of the case is property of the estate. The debtor may exempt property from property of the estate pursuant to state or federal law." *In re Valone*, 500 B.R. 645, 650 (Bankr.M.D.Fla.2013) *aff'd*, 2014 WL 970024 (M.D.Fla.2014).  "The Bankruptcy Code allows a debtor to exempt certain property from the bankruptcy estate, *see* 11 U.S.C. § 522(b)(1), and it lists categories of property eligible for exemption, *see id.* § 522(b)(2), (d)." *In re Cassell*, 688 F.3d 1291, 1294 (11th Cir. 2012) *certified question answered sub nom. Silliman v. Cassell*, 292 Ga. 464, 738 S.E.2d 606 (2013).  "Florida residents who file bankruptcy petitions may claim the exemptions that are provided by the Florida Constitution and Florida Statutes. See Fla. Stat. § 222.20." *In re Rodale*, 452 B.R. 290, 293 (Bankr.M.D.Fla.2011).  "On the filing date of a bankruptcy case, property of the estate includes exempt property. However, once a debtor's claim of exemption is allowed, exempt property is considered withdrawn from the estate." *In re Quezada*, 368 B.R. 44, 48 (Bankr.S.D.Fla.2007) (*citing In re Ruppel,* 368 B.R. 42, 43–44 (Bankr.D.Or.2007); *In re Farr,* 278 B.R. 171, 177 (9th Cir. BAP 2002)); *In re Covington,* 368 B.R. 38, 40–41 (Bankr.E.D.Cal.2006)); *see In re Cutaia*, 410 B.R. 733, 738 (Bankr.S.D.Fla.2008).

---

has been abandoned, but turns on whether § 506(d) gives a Chapter 7 debtor the right or standing to avoid a lien on the debtor's property.")

"The Chapter 7 trustee is charged with collecting and reducing to money the property of the estate, and to distribute property of the estate to claimants in their order of priority." *In re Valone*, 2014 WL 970024 (M.D. Fla. 2014).[17]  "A [Chapter 7] trustee is vested with authority to sell the property of the estate (11 U.S.C. § 363(b)(1)), and also is authorized to abandon property of the estate (11 U.S.C. § 554). Property which is not sold or otherwise administered during the course of a bankruptcy proceeding is deemed abandoned upon the closing of the bankruptcy proceeding." *In re Bast*, 366 B.R. 237, 240 (Bankr.S.D.Fla.2007) (*citing In re Balonze,* 336 B.R. 160 (Bankr.D.Conn.2006)).

Therefore, Chapter 7 debtors who received a discharge in a case where the subject property is no longer property of the estate because the debtor has applied the homestead exemption should not be permitted to strip a partially or wholly unsecured junior mortgage lien under Section 506(d). Accordingly, as the Debtors claimed the Property as exempt (R. 15) which precludes application of Section 506, this case should be reversed and remanded to the Bankruptcy Court.

**V.     Debtors should not be permitted to "strip off" Space Coast's junior mortgage lien after expiration of the claims bar date in their "asset" Chapter 7 case.**

Unlike *McNeal*, the Debtors here filed their Motion to Value two (2) months after the bar date to file claims expired, thereby prejudicing Space Coast by preventing it from timely filing a proof of claim and participating in a distribution to unsecured creditors.[18]  Further, debtors in Chapter 7 asset cases should not be permitted to strip a junior lien after the claims bar date has run, thereby prejudicing the creditor by preventing it from filing a timely proof of claim and receiving a pro rata distribution as an unsecured creditor.  Prior to the Court's entry of the Order Granting Motion to Value, Space Coast was an undersecured creditor, not a wholly unsecured creditor.

"In a Chapter 7 case, '[i]f an unsecured creditor wishes to participate in the distribution of the assets of a bankruptcy estate, the creditor must file a timely proof of claim with the bankruptcy

---

[17] "[U]nlike in a Chapter 7 case, a Chapter 13 trustee is not charged with the duty to administer property of the estate, and the debtor's residence never becomes subject to administration by the Chapter 13 trustee. Therefore, a Chapter 13 debtor who proposes to retain his residence during the term of his plan but who does not claim the residence as exempt still receives the homestead exemption's protections despite failing to assert the homestead exemption." *In re Valone*, 500 B.R. at 651.

[18] On February 14, 2012, the Chapter 7 Trustee filed a Notice of Assets and Notice of Deadline to File Claims (R. 75).  The deadline for creditors to timely file a proof of claim was May 16, 2012.

court.'" *In re Channakhon*, 465 B.R. 132, 137-38 (Bankr.S.D.Ohio 2012) (*citing In re Nowak,* 586 F.3d 450, 454 (6th Cir.2009)).  "And even if a creditor has filed a secured claim, it nonetheless must file an unsecured proof of claim or amend its secured claim in order to receive a distribution of property of the estate set aside for unsecured creditors." *Channakhon*, 465 at 137-8; *see In re Padget,* 119 B.R. 793, 796 (Bankr.D.Colo.1990) ("The Court concludes that an undersecured creditor in a Chapter 7 case who files a claim denoted a secured claim must timely file an amended, or supplemental claim, for its unsecured claim . . . if it desires to be treated as an unsecured creditor by the trustee.").

"The right to share in the distribution of the estate . . . requires that a creditor have an allowed claim against the estate. Allowance of a claim is the gateway to participation in the distribution of the assets of the estate. Rule 3002(a) provides, however, that '[a]n unsecured creditor or an equity security holder must file a proof of claim or interest for the claim or interest to be allowed....' A proof of claim, once filed, is deemed allowed. . . . a creditor must file a proof of claim, evidencing that right to payment, to be entitled to share in the distribution of the estate. Thus, the end result of filing a proof of claim is that the proof of claim entitles the creditor to a portion of the debtor's assets, or the estate, if any are available." *In re Ricks*, 253 B.R. 734, 741-42 (Bankr.M.D.La.2000).[19]

"To determine distribution entitlement" for a partially secured creditor "the collateral must be valued." *In re Envirocon Intern. Corp.*, 218 B.R. 978, 981 (M.D.Fla.1998).  "Case law has established that, pursuant to Rule 3012, Fed. Bankr.P., a request for valuation must be made by motion to the court. *See Agricredit Corp. v. Harrison,* 987 F.2d 677, 681 (10th Cir.1993), *Piedmont*

---

[19] "Rule 3002(c)(3) applies only to creditors whose claims arise as a result of a recovery by the bankruptcy trustee." *Int'l Diamond Exch. Jewelers, Inc.,* 188 B.R. 386, 391 (Bankr.S.D.Ohio 1995); *see In re Brotman Medical Center, Inc.,* 2008 WL 8444797 (9th Cir.B.A.P. Aug. 15, 2008); *In re Ketchum,* 2013 WL 3479652 at *5 (Bankr.N.D.Ohio 2013); *see also Matter of Mul Corp.*, 60 B.R. 636, 640 (Bankr.D.Conn.1986) ("Rule 3002(c)(3) must be read to encompass claims arising from all recoveries by the trustee, not just those claims arising as a result of a judgment. The sensible solution is to hold that all claims must be filed within thirty days from the date of recovery by the trustee."); *In re C.W. Min. Co.,* 477 B.R. 176, 191 n.56 (B.A.P. 10th Cir. 2012) *aff'd,* 749 F.3d 895 (10th Cir. 2014) ("Rule 3002(c)(3) provides that a defendant in an adversary proceeding may file a claim in the bankruptcy case if there is a judgment entered against it so long as it files the claim within thirty (30) days of entry of the judgment and so long as the defendant has satisfied the judgment within thirty (30) days.")

*Trust Bank v. Linkous,* 141 B.R. 890, 894 (W.D.Va.1992). As evidenced by the language of the Rule, any party in interest may move for a valuation. The courts in both *Harrison* and *Linkous*, however, have held that a secured creditor has the burden of doing so in situations where it wants to maintain its entitlement to a distribution from the bankruptcy estate on its partially secured claim." *Envirocon Intern. Corp.*, 218 B.R. at 981 ("[T]he appellant failed to file a timely motion to value its collateral as required by 11 U.S.C. § 506(a). . . . appellant surrendered its right to take part in the bankruptcy estate's distribution of assets.")

"The Trustee's practice of not distributing property of the estate earmarked for unsecured creditors to a creditor that has not filed an unsecured claim is entirely consistent with the duties imposed on Chapter 7 trustees by § 704 of the Bankruptcy Code, including their duty, 'if a purpose would be served, [to] examine proofs of claims and object to the allowance of any claim that is improper.' 11 U.S.C. § 704(a)(5)." *Channakhon*, 465 B.R. at 138.

"Post-bar date claims disrupt the orderly discharge of a debtor and, for this reason, late-filed claims are generally disallowed." *In re Marineland Ocean Resorts, Inc.,* 242 B.R. 748, 753 (Bankr.M.D.Fla.1999). "[T]he United States Supreme Court has stated that excusable neglect is not recognized as a basis to extend the Bar Date in Chapter 7 case." *In re DV8, Inc.,* 435 B.R. 738, 740-41 (Bankr.S.D.Fla.2010) (*citing Pioneer Services Co. v. Brunswick Assocs. Ltd. Ptshp.,* 507 U.S. 380 (1993)) ("The "excusable neglect" standard of Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases but not in Chapter 7 cases."); *see In re Jemal*, 496 B.R. 697, 703 (Bankr.E.D.N.Y.2013) ("[W]here a claim is filed late in a Chapter 7 case, application of the "excusable neglect" standard is inappropriate.")

Space Coast, whose mortgage lien should have otherwise passed through the bankruptcy unaffected under *Dewsnup*, was foreclosed of its ability to timely file a proof of claim for its wholly unsecured mortgage lien and therefore lost the opportunity participate in a pro rata distribution to unsecured creditors. Accordingly, this case should be reversed and remanded to the Bankruptcy Court.

## CONCLUSION

For all of the reasons stated above, Space Coast respectfully requests that the Court reverse the Order Granting Debtors' Motion to Value and Order Denying Space Coast's Motion to Reconsider.

Dated: November 3, 2014                                Respectfully Submitted,

**BLAXBERG, GRAYSON & KUKOFF P.A.**
*Attorneys for Space Coast Credit Union*
25 SE Second Avenue, Suite 730
Miami, Florida  33131
Phone: (305) 381-7979 x 317
Fax:     (305) 371-6816
alexis.read@blaxgray.com

By:   /s/ *Alexis S. Read*
　　　　　Alexis S. Read, Esq.
　　　　　Fla. Bar No. 98084

## CERTIFICATE OF COMPLIANCE

**I HEREBY CERTIFY** that this Opening Brief complies with the type volume limitations set forth in Fed.R.Bank.P.8010 and Local Rule 87.4.  I have used Times New Roman style type, size 12, with one and one-half spacing and the Brief contains 30 pages, in accordance with this Court's Order entered November 3, 2014.

## CERTIFICATE OF SERVICE

**I HEARBY CERTIFY** on November 3, 2014, a true and correct copy of the foregoing Opening Brief and annexed Index was served via CM/ECF electronic transmission to those parties who are currently on the list to receive e-mail notice and service for this case, and by regular U.S. Mail to the following parties: Christian S Diaz, Esq., *Counsel for Appellee-Debtors*, 14100 Palmetto Frontage Road, Suite 203, Miami Lakes, FL 33016, nekeisha@alianzalaw.com

By:    /s/ Alexis S. Read
　　　　　Alexis S. Read, Esq.
　　　　　Fla. Bar No. 98084